### SOUTHERN UNDERWRITERS v. HUFFMAN et ux.

#### No. 10673.

Court of Civil Appeals of Texas. Galveston.

Feb. 10, 1938.

Rehearing Denied March 10, 1938.

Battaile, Burr & Holliday, of Houston, for plaintiff in error.

Grindstaff, Zellers & Hutcheson, of Weatherford, for defendants in error.

GRAVES, Justice.

These two statements from the briefs of the respective parties comprehend what is concededly a correct characterization of the nature, as well as the result of the trial, of this proceeding below:

"This suit was brought on July 22, 1936, in the district court of Jackson county, Tex., by the Southern Underwriters, to set aside an award of the Industrial Accident Board rendered on June 17, 1936, on the claim of James Otis Huffman and wife for compensation for the death of their son, James Otis Huffman, Jr. It appears from the record that all facts existed to give the trial court jurisdiction of the suit. The date of the injury was April 6, 1936. The employer knew of it on the same date, and formal notice was filed with the board on April 18, 1936. Claim for compensation against the Southern Underwriters for an amount in excess of $1,000 was filed with the board on the same date. On the 17th day of June, 1936, the board rendered its final ruling and decision on said claim. On July 3, 1936, the Southern Underwriters filed with the board its notice of unwillingness to abide by said decision.

"Defendants in error duly filed their original answer and cross-action, and their first amended original answer and cross-action. The general issue was made by plaintiff and cross-defendants' first supplemental petition and answer to defendants' cross-action. On these last pleadings the cause proceeded to trial before a jury, and upon the jury's verdict, along with additional findings of its own, the court rendered judgment for defendants in error in the sum of $4,447.76."

"Zack Brooks was a trucking contractor operating under what is known as a special commodity permit obtained from the Railroad Commission. The defendant in error James Otis Huffman, Sr., was the foreman or superintendent for Brooks and had been for many years. He had charge of all trucking operations for said Brooks and employed the men to drive the trucks. As foreman, he employed his son, James Otis Huffman, Jr., to work for Brooks in the capacity of truck driver. This employment was well known by Brooks as it is undisputed that Brooks obtained a written consent from said Huffman, Sr., and his wife, the mother of the deceased, to employ and work Huffman, Jr.

"On April 5, 1936, young Huffman was sent as truck driver to take a load from Greggton in Gregg county, Tex., to a place near Corpus Christi. He arrived at his destination, called his home office for instructions, and was directed to load the truck with oil field equipment and transport it from a point near Corpus Christi to a place in East Texas. While upon the return trip, he accidentally wrecked his truck near Edna. The truck burned, and young Huffman was burned to death."

All the facts having been undisputed as presented below, the sole question on the appeal is one of law, that is, whether or not—in the circumstances so shown—the parents of young Huffman were entitled to the benefits so awarded them under the compensation law in consequence of his untimely death; in turn, that broad inquiry appears to depend in the main, if not altogether, upon the construction that should be given to R.S. article 8306, § 12i, applied to such undisputed facts, that statute being in haec verbis this: "A minor who has been employed in any hazardous

or other employment which is prohibited by any statute of this state, shall nevertheless be entitled to receive compensation under the terms and provisions of this act. Provided, that this section shall not be construed to excuse or justify any person, firm or corporation employing or permitting to be employed a minor in any hazardous or other employment prohibited by any statute of this state."

Contending for a reversal and rendition in its favor of the cause here, the plaintiff in error urges two major presentments, to this effect: (1) That young Huffman never became an "employee" of Brooks, within the meaning of the compensation law, because the pseudo contract between them, in pursuance of which he so lost his life, was—within the knowledge and with the connivance of his parents—in violation of law and wholly void, hence furnished no support whatever for the cause of action sued upon; (2) In the alternative, whether or not the son was such an "employee," and the contract for his services to Brooks valid, the quoted statute, section 12i, would at most have only entitled the minor himself to receive compensation for his work had he been injured and lived, but did not, in the attending circumstances, entitle his parents to the compensation awarded them, he having died.

Since, as indicated, it is not controverted that the judgment so rendered was a proper one, under the unattacked findings of both court and jury in response to virtually undisputed evidence, unless it be nullified as a matter of law by one or both of the stated defenses against it—urged alike in both courts—it is deemed unnecessary to restate any evidence except such as may be appropriate in consideration of the legal consequences thus claimed here to have followed.

While the holding is attended with something of reluctance and doubt, this court concludes that the second of those objections should be sustained, the judgment reversed, and the cause rendered in favor of the Southern Underwriters.

In other words, whether or not the 17 year old boy became an "employee" within the meaning of the compensation law as a result of his having misrepresented his age to the Railroad Commission as being 18—presumably for the purpose of getting the desired license—section 12i of R.S. article 8306 should not be construed as entitling his parents in their situation to compensation as a benefit resulting from his death, even if he himself would have been entitled to it as an injury benefit, had he survived; this for the reason that such provision appears to have been incorporated into the compensation statute by the amendment thereto of 1931, the objective of which presumably was to correct impositions that had become somewhat in vogue against minors, hence it was mainly, if not exclusively, a protective measure for their benefit; the implication from the terms of its proviso seems plain that the purpose was rather to prevent than to permit what happened in this instance—that is, that the parents of a minor and an employer who desired his services might by just such an agreement as was made in this instance nullify the protection the law threw around him by mutually agreeing that he might, though under age, undertake such work as this boy lost his life in doing—the hazardous occupation of a truck driver—and if he were injured or killed in the prosecution of it, his de facto employer should in no way be liable for the result; the prearranged written consent of this boy's parents to such employment of him by Brooks—referred to in the general statement, supra—all parties thereto knowing all the facts at that time, both about the boy's age, and the character as well as hazards of the employment, was as follows:

"February 19, 1935.

"Mr. Zach Brooks, Henderson, Texas.

"Dear Sir: It is my wish to have my son, J. O. Huffman, Jr., a minor, to work for you if you should have any opening for his services.

"I hereby release you, your heirs and assigns, for any liability or claim that might arise, should he become injured in any way while in your employ.

"Witness my hand this the 19th day of February, 1935.

"[Signed] J. O. Huffman."

Since the compensation awarded the Huffmans as husband and wife was community property between them (Chicago, R. I. & G. Ry. v. Oliver, Tex.Civ.App., 159 S.W. 853), this written consent would have the same effect as to her as it did as to her husband.

These parents, therefore, acting through the father, however solicitous for the welfare of their minor son they may have been, thus knowingly by their own acts sent him into this hazardous employment, with the

knowledge that he had misstated his age to the Railroad Commission in order to qualify for it, and further undertook as his natural guardians to relieve his prospective employer of any liability for having so improperly caused him to undertake an obviously dangerous work, all in the face of what seems to have been the plain purpose of the proviso to prevent such a thing; it does not seem to be an answer to this consideration to say, as the defendants in error in effect do, that the employment he was killed in was not such "hazardous or other employment as was prohibited by any statute of this state," because, his employment in the capacity in which he served here—a driver of a truck for a motor carrier operating under R.S. article 911b, and Penal Code, article 1690b—was expressly prohibited by rule 3 of the Railroad Commission, reading as follows:

"All drivers of motor vehicles operated by motor carrier companies in Texas, under a certificate of permit issued by the Railroad Commission, shall be not less than eighteen years of age, of good moral character, experienced in operating motor vehicles, and fully competent to carefully, safely and courteously operate the vehicles under their charge."

See, also, R.S. article 6687, as it appears in the Acts of 1917, Penal Code, article 813, and Penal Code, article 827a, § 9.

█ This rule of the Railroad Commission, under well-settled authorities, would seem to have had the same force and effect as if it had been a statute. Texarkana & F. S. Ry. Co. v. Houston Gas & Fuel Co., 121 Tex. 594, 51 S.W.2d 284; West Texas Compress & Warehouse Co. v. Panhandle, etc., Ry. Co., Tex.Com.App., 15 S.W.2d 558; Sun Oil Co. v. Railroad Commission, Tex. Civ.App., 68 S.W.2d 609.

So that, upon the whole, under this construction of section 12i, supra, the parents occupied a different status as claimants to compensation from that their son would have enjoyed, had he been merely nonfatally injured, however upright their purposes in so subjecting him, when under age, to the hazards that brought about his untimely death, hence could not benefit from their own wrong in so doing. 1 Tex.Jur. 629, 630, Actions, § 22; Wiggins v. Bisso, 92 Tex. 219, 47 S.W. 637, 71 Am.St.Rep. 837; Read v. Smith, 60 Tex. 379.

Without further discussion, the order of reversal and rendition will enter.

Reversed and rendered.

PLEASANTS, C. J., absent.

On Motion for Rehearing.

GRAVES, Justice.

In their motion for rehearing the appellees misconstrue this court's former holding: It did not, as they assume, either uphold the agreement under which young Huffman worked as a valid contract under the compensation act, or as constituting him an "employee" as defined by its terms—on the contrary, basing its opinion entirely upon a sustaining of the appellant's alternative proposition No. 2, reading as follows: " * * * whether or not the son was such an 'employee', and the contract for his services to Brooks valid, the quoted statute, section 12i, would at most have only entitled the minor himself to receive compensation for his work had he been injured and lived, but did not, in the attending circumstances, entitle his parents to the compensation awarded them, he having died."

With that reminder, the reaches of the appended holding are plain, hence need not be repeated; furthermore, a re-examination of the statement of facts convinces this court that its former findings of fact are fully supported in the evidence heard—indeed, the February 19 of 1935 date of the previously-copied agreement between Huffman, Sr., and Brooks, in an effort to avert the legal consequences of Huffman Jr's. minority, whereas the service they so sent him into occurred as late as April 5 of 1936, strongly implies they both that early were fully conversant with all the facts and attending conditions set out in our former opinion inclusive of Huffman Sr's. knowledge that the boy necessarily had to misrepresent his age in order to obtain the permit he could not do the work without.

While the motion has been carefully considered, this court is constrained to adhere to its former disposition of the cause. The motion will, therefore, be refused.

Overruled.

PLEASANTS, C. J., absent.